UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

WILLIAM L. COURTRIGHT,

Defendant.

Case Number: _____

Chief Judge Conner

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1
18 U.S.C. § 371
(Conspiracy)

At times material to this Information:

A.   Persons and Entities

1. The City of Scranton, Pennsylvania was an organization and local government that received federal assistance in excess of $10,000 in each of the one-year calendar periods beginning on January 1, 2014 and ending on December 31, 2018.

2. Defendant WILLIAM L. COURTRIGHT was the elected Mayor of the City of Scranton. COURTRIGHT took office in January 2014 and was re-elected in 2017.

3. COURTRIGHT's office vested in him actual and perceived authority and influence over, among other things, the awarding of certain contracts, licenses and permits by the City of Scranton.

4. Defendant COURTRIGHT's office also vested in him actual and perceived authority over certain offices and bodies within the City of Scranton government, including: the Office of Licensing, Inspections and Permits; the City Planning Commission; the Departments of Administration and Community Development; the Collector of Taxes; and, the Scranton City Council.

5. COURTRIGHT was an agent of the City of Scranton empowered to take official action on behalf of the City. Contract awards in the City of Scranton required official action by public officials. Pursuant to Article VI, § 6-14(D) of the City of Scranton Administrative Code, all contracts awarded by the City of Scranton had to be signed by the Mayor.

6. Defendant WILLIAM L. COURTRIGHT was also the owner of Summit Karate Club, which was located in Scranton.

7. Person #1 was the president of Company #1. Company #1 was a company that wished to maintain a contract with the City of Scranton for the Collection of Delinquent Taxes and Refuse Fees.

8. On August 22, 2011, before WILLIAM L. COURTRIGHT was elected Mayor, Company #1 was awarded a contract by the City of Scranton to collect delinquent taxes owed to the City for tax years 2010 and earlier. The contract is hereinafter referred to as "the Company #1 Contract." The Company #1 Contract was signed by, among others, the former Mayor of the City of Scranton and Person #1, the president of Company #1. The term of the Company #1 Contract ended on July 31, 2013 and the parties had the option to renew the contract for an additional one year by giving written notice of their intent to do so ninety days before the expiration of the contract term.

9. On March 19, 2012, the City of Scranton and Company #1 entered an Addendum Agreement to the Company #1 Contract to include the collection of delinquent refuse fees by Company #1. The Addendum Agreement for services was signed by, among others, the former Mayor of the City of Scranton and Person #1.

10. On July 26, 2013, the City of Scranton and Company #1 entered a Second Addendum Agreement to the Company #1 Contract. The Second Addendum Agreement was signed by, among others, the former Mayor of the City of Scranton and Person #1. The Second Addendum Agreement provided that the contract for the collection of delinquent taxes and refuse fees by Company #1 would be extended for an additional year and that the contract would automatically continue for additional one-year periods thereafter, unless terminated by either party by giving written notice of its intention to terminate the contract ninety days before expiration of the then current term. As Mayor of the City of Scranton, COURTRIGHT had authority to influence and cause termination of the Company #1 Contract.

11. Person #2 was the owner and manager of a company that developed commercial and residential properties in the City of Scranton. To conduct business, Person #2 needed occupancy permits, contractor's licenses and other official authorizations from the City of Scranton, which Person #2 requested from the City of Scranton Office of Licensing, Inspections and Permits.

12. Other unnamed persons owned or operated businesses that sought licenses, grants, services, contracts and other things of value from the City of Scranton or from offices and bodies within the City of Scranton over which COURTRIGHT exercised actual and perceived authority.

B.  Objects of the Conspiracy

13. An object of the conspiracy was for COURTRIGHT and others to accept, and agree to accept, for the benefit of COURTRIGHT and others, cash and other valuable property from others who had business and transactions with the City of Scranton involving things of value of $5,000 and more intending for COURTRIGHT to be corruptly influenced and rewarded in connection with the business and transactions. It was also an object of the conspiracy for COURTRIGHT to use his position as Mayor corruptly to obtain cash and other valuable property from others, with their consent, under color of official right. It was also an object of the conspiracy for COURTRIGHT to use his position as Mayor corruptly to obtain cash, campaign contributions and other valuable property from others, with their consent, induced by the wrongful use of fear of economic harm.

C.  Manner and Means

14. It was part of the conspiracy that Defendant WILLIAM L. COURTRIGHT solicited cash payments, campaign contributions and other property, for the benefit of COURTRIGHT, from individuals and entities wishing to conduct business in the City of Scranton or with the City of Scranton. COURTRIGHT directed others, including unindicted co-conspirators associated with the City of Scranton and the "Friends of Bill Courtright" campaign committee, to solicit such payments, campaign contributions and other property for the benefit of COURTRIGHT. COURTRIGHT obtained payments, campaign contributions and other property through threats of economic harm. In some instances, COURTRIGHT took adverse official action against persons and entities to cause them to make payments and contributions for the benefit of COURTRIGHT. In some instances, COURTRIGHT directed unindicted co-conspirator employees of the City of Scranton to take such adverse action against persons and entities to compel payments and contributions for the benefit of COURTRIGHT.

15. For example, shortly after taking office in 2014, COURTRIGHT directed one and more representatives of the City of

Scranton to take official action temporarily to halt development projects of Person #2. Person #2 was a friend and supporter of a former Mayor of Scranton and did not provide financial support to COURTRIGHT's campaign to be elected Mayor of Scranton in 2013. In fact, a number of Person #2's projects were halted. The projects were permitted to proceed only after Person #2 agreed to provide financial support to COURTRIGHT.

16. It was also part of the conspiracy that Defendant WILLIAM L. COURTRIGHT obtained property including, but not limited to, tens of thousands of dollars in cash, use of a beach property, installation of a staircase and support framing at Summit Karate Club, and landscaping work at his personal residence. This property was obtained from businesspersons, with their consent, under color of official right, in exchange for COURTRIGHT's official action and influence as specific opportunities arose.

17. It was also part of the conspiracy that Defendant WILLIAM L. COURTRIGHT corruptly accepted and agreed to accept, for the benefit of COURTRIGHT and others, thousands of dollars in cash and other things of value intending for COURTRIGHT to be influenced and

rewarded in connection with business, transactions and series of transactions of the City of Scranton involving contracts of a value of $5,000 and more.

18. On some occasions, to insulate COURTRIGHT from the actual physical transfer of cash payments, it was part of the conspiracy that intermediaries accepted cash payments made to COURTRIGHT and then later transferred the cash to COURTRIGHT.

D.  The Conspiracy

19. From on or about February 1, 2014 to on or about January 9, 2019, in the Middle District of Pennsylvania, and elsewhere, the defendant,

WILLIAM L. COURTRIGHT,

did knowingly and intentionally conspire and agree with other persons known and unknown to the United States: (1) to obstruct, delay, and affect in any way and degree commerce, and the movement of articles and commodities in commerce, by extortion through the wrongful use of fear of economic harm, in violation of Title 18, United States Code, Section 1951(a); (2) to obstruct, delay, and affect in any way and degree commerce, and the movement of articles and commodities in commerce,

by extortion under color of official right, in violation of Title 18, United States Code, Section 1951(a); and (3) to corruptly solicit, demand, accept and agree to accept, for the benefit of any person, anything of value from any person, intending for COURTRIGHT to be influenced and rewarded in connection with any business, transaction and series of transactions of the City of Scranton involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

E. Overt Acts

20. In furtherance of the conspiracy, members of the conspiracy committed the following overt acts, among others:

a. On July 28, 2017, WILLIAM L. COURTRIGHT accepted a payment in the amount of $1,500 from another person;

b. On August 17, 2017, WILLIAM L. COURTRIGHT accepted a cash payment in the amount of $1,500;

c. On August 29, 2017, WILLIAM L. COURTRIGHT accepted a cash payment in the amount of $1,000;

d. On November 17, 2017, WILLIAM L. COURTRIGHT directed another person to deliver $4,000 in cash to an intermediary;

e. On January 4, 2018, WILLIAM L. COURTRIGHT accepted $2,500 in cash from another person;

f. On May 2, 2018, WILLIAM L. COURTRIGHT directed another person to deliver $2,000 in cash to an intermediary;

g. On May 2, 2018, an intermediary accepted $2,000 in cash from another person;

h. On May 29, 2018, WILLIAM L. COURTRIGHT directed another person to deliver $3,000 in cash to an intermediary;

i. On May 29, 2018, an intermediary accepted $3,000 in cash from another person;

j. On July 11, 2018, WILLIAM L. COURTRIGHT accepted $2,500 in cash from another person;

k. Between 2014 and on or about January 9, 2019, COURTRIGHT accepted tens of thousands of dollars in cash and other things of value from multiple businesspersons who had business pending before the City of Scranton or pending before offices or bodies within the City of Scranton government;

l. On multiple occasion between 2014 and on or about January 9, 2019, intermediaries delivered thousands of dollars in cash to WILLIAM L. COURTRIGHT;

m. On or about January 9, 2019, WILLIAM L. COURTRIGHT stored thousands of dollars in cash in a safe at his residence, part of which was cash paid to COURTRIGHT by Person #1 and Person #2.

In violation of Title 18, United States Code, Section 371.

THE UNITED STATES ATTORNEY FURTHER CHARGES:

## COUNT 2
18 U.S.C. § 1951(a)
(Attempt to Obstruct Commerce by
Extortion Under Color of Official Right)

21. The allegations contained in paragraphs 1-18 and 20 are fully incorporated herein.

22. On or about January 4, 2018, in Scranton, in the Middle District of Pennsylvania, defendant,

### WILLIAM L. COURTRIGHT,

did knowingly and intentionally attempt to obstruct, delay, and affect interstate commerce by extortion under color of official right -- that is, by taking and obtaining a payment in the amount of $5,000, $2,500 of which was in cash and $2,500 of which was in the form of a campaign contribution made by check, which COURTRIGHT believed came from Person #2, with Person #2's consent. Regarding the $2,500 payment in the form of a campaign contribution, COURTRIGHT took and obtained the payment in *quid pro quo* exchange for COURTRIGHT's agreement to take official action to assist Person #2 to obtain a contractor's license from the City of Scranton Office of Licensing, Inspections and Permits. Regarding the $2,500 cash payment, COURTRIGHT took and obtained

the payment in *quid pro quo* exchange for COURTRIGHT's official actions on behalf of Person #2 to assist Person #2 to obtain a contractor's license from the City of Scranton Office of Licensing, Inspections and Permits and to take additional official action to assist Person #2 as specific opportunities arose.

In violation of Title 18, United States Code, Sections 1951 and 2.

THE UNITED STATES ATTORNEY FURTHER CHARGES:

## COUNT 3
18 U.S.C. § 666(a)(1)(B)
(Bribery Concerning Programs Receiving Federal Funds)

23. The allegations contained in paragraphs 1-18 and 20 are fully incorporated herein.

24. On or about November 17, 2017, in Scranton, in the Middle District of Pennsylvania, defendant,

### WILLIAM L. COURTRIGHT,

did knowingly and corruptly accept, and agree to accept from another, for the benefit of himself and others, things of value as set forth below, intending for defendant COURTRIGHT to be influenced and rewarded in connection with a business, transaction and series of transactions of the City of Scranton involving a thing of value of $5,000 and more, namely, COURTRIGHT accepted a cash payment in the amount of $4,000, intending to be influenced and rewarded in connection with the continuation of a delinquent tax collection contract of a value of more than $5,000 awarded by the City of Scranton to Company #1. At the direction of COURTRIGHT, the $4,000 cash payment was hand-delivered to an intermediary, who accepted the corrupt payment on

behalf of COURTRIGHT. At the time he accepted the payment, COURTRIGHT believed the payment came from Person #1.

In violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

25. The allegations contained in Counts 1 through 3 of the foregoing Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

26. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1951 and 666 as set forth in Counts 2 and 3 of this Information, the defendant,

### WILLIAM L. COURTRIGHT,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses and any property, real or personal, involved in such offenses. The property to be forfeited includes, but is not limited to, the following:

   a. $36,705 United States currency.

27. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DAVID J. FREED
UNITED STATES ATTORNEY

7/1/2019
DATE

BY: *Michelle L. Olshefski*
MICHELLE L. OLSHEFSKI
ASSISTANT U.S. ATTORNEY

BY: *Michael A. Consiglio*
MICHAEL A. CONSIGLIO
ASSISTANT U.S. ATTORNEY