UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 3:19-CR-208 |
| | ) | |
| v. | ) | (J Mannion) |
| | ) | |
| WILLIAM L. COURTRIGHT | ) | |
| Defendant | ) | Filed Under Seal |

## GOVERNMENT SENTENCING MEMORANDUM REGARDING DEFENSE OBJECTIONS TO PRESENTENCE REPORT

I. **INTRODUCTION**

The defendant, William L. Courtright, has objected to several findings of the United States Probation Office's presentence investigation report (PSR). Specifically, the defense contests the loss calculation, the four-level leadership enhancement, and the four-level enhancement for public official engaged in high-level decision-making, and the failure to award acceptance of responsibility. (Addendum to the PRS; Sentencing Memorandum of Defendant). The Court has directed the parties to brief the objections. On January 17, 2020, the defendant filed his sentencing memorandum. The Government herein responds.

1

## II. PROCEDURAL HISTORY

In July 2019, the Government filed a three-count information charging the Defendant with a variety of public corruption offenses associated with his elected position as Mayor of the City of Scranton. Doc. 1. At Count 1, the information charged that the defendant engaged in a criminal conspiracy to commit an offense against the United States in violation of Title 18, United States Code, Section 371. Doc. 1. The conspiracy alleged three separate criminal objects: a) obstruct commerce by extortion through the wrongful use of fear of economic harm, 18 U.S.C. §1951(a), b) obstruct commerce by extortion under color of official right, 18 U.S.C. §1951(a), and c) bribery concerning programs receiving federal funds, 18 U.S.C. §666. Doc. 1.

At Count 2, the defendant was alleged to have committed attempt to obstruct commerce by extortion under color of official right, in violation of Title 18, United States Code, Section 1951(a). Doc. 1. At Count 3, the defendant was charged with bribery concerning programs receiving federal funds in violation of Title 18, United States Code, Section 666(a)(1)(B). Doc. 1.

With the filing of the information, a written guilty plea agreement was filed. Per the agreement, the Defendant agreed to plead guilty to all of these offenses. Doc. 3, ¶1. If he appropriately accepted responsibility for his role in this offense, the Government would recommend a three-level reduction of his offense level per U.S.S.G. §3E1.1. Doc. 3, ¶11. The Defendant also agreed to resign from his position as Mayor of the City of Scranton. Doc. 3, ¶34.

On July 2, 2019, the Defendant entered a guilty plea to the charges in the information. Doc. 8. During the guilty plea proceeding, the Government read a twenty-page statement of offense conduct which had previously been provided to the defense and reviewed for accuracy. Doc. 13, p. 20-40.

The Government announced in court that some of the charges against the Defendant arose from an undercover FBI investigation related to a contract with Company #1 to collect taxes and refuse fees. Doc. 13, p. 23. The Defendant admitted that he "accepted thousands of dollars in cash and in purported campaign contributions" from a person affiliated with Company #1 "in quid pro quo exchange for Courtright's corrupt agreement to maintain the City's contract with" this company.

Doc. 13, p. 23. Although the contract was in existence before the Defendant's term as mayor, the Defendant accepted these things of value "to corruptly influence his official decision to maintain the City's contract" with the company. Doc. 13, p. 24-25.

The Government also indicated that other charges were based on the Defendant's corrupt receipt of things of value from a number of persons including, cash from a contractor identified as Person #2; cash, home and office repairs from an individual identified as Person #3; and cash payments, received directly or through intermediaries, totaling more than $50,000 from more than ten business persons who sought to corruptly influence him during his years as mayor. Doc. 13, p. 25-26, 27-28, 31.

At the conclusion of the statement, the Defendant made four clarifications to the facts, but otherwise adopted the accuracy of the statement. *Id.* at 38-40. The clarifications did not undermine accuracy of the above referenced passages from the statement of offense conduct. *Id.*

Following the guilty plea proceedings, the Government learned that the City of Scranton had an alternative to continuing to contract

with Company #1. PSR ¶14-21. This alternative collection authority would have reduced costs for the City and was being utilized by other municipalities in the region to collection taxes and refuse fees, saving those municipalities significant amounts of money. PSR ¶20. But that alternative collection opportunity was not pursued by the Defendant under circumstances which suggest it was done to protect Company #1's contracts. PSR ¶14-20. A subsequent examination of the benefits that Company #1 received by continuing to keep these contracts for the years 2015-2019, revealed that Company #1 earned profits in excess of $2.9M. PSR ¶55.

The United States Probation Office completed a Presentence Report ("PSR") and calculated the sentencing guidelines as follows:

| | | |
|---|---|---|
| 14 | U.S.S.G. §2C1.1(a)(1) | Public official |
| +2 | U.S.S.G. §2C1.1(b)(1) | Multiple bribes |
| +4 | U.S.S.G. §2C1.1(b)(3) | High ranking official |
| +4 | U.S.S.G. §3B1.1(a) | Leadership enhancement |
| +16 | U.S.S.G. §2B1.1, 2C1.1(b)(2) | <$1.5M Benefit to briber |
| 40 | Adjusted Offense Level | |

PSR ¶¶52-66.

In a general statement of objections filed by counsel, the defense notified the U.S. Probation Office that it contests the benefit to the bribers calculation, the leadership guideline adjustment, and the

applicability of the high ranking official guideline adjustment. Doc. 18, p. 4. As a result, the U.S. Probation Office did not recommend that the Defendant receive a reduction for acceptance of responsibility. PSR ¶65.

The Court has requested that the parties file memoranda regarding the Sentencing Guideline objections. On January 17, 2020, the defense filed their memorandum. The Government herein responds.

### III. **DISCUSSION**

The sentencing court is required to engaged in a three-step process: (1) calculate the defendant's advisory Guidelines range; (2) formally rule on parties motions for departure and, if granted, state how the departure affects the Guideline calculation; and (3) consider the statutory sentencing factors specified in 18 U.S.C. §3553(a) and determine the appropriate sentence to impose. *United States v. Jackson*, 862 F.3d 365, 370-71 (3d Cir. 2017); *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2014). The following memorandum addresses the defendant's challenges to the Sentencing Guidelines calculations at step-one. Resolution of Guideline challenges is done by a preponderance of the evidence. *United States v. Grier*, 475 F.3d 556,

568 (3d Cir. 2007) (en banc); *United States v. Rackley*, 175 Fed. Appx. 564, 569 (3d Cir. 2006) (not precedential).

### A. Loss Calculation - U.S.S.G. §2B1.1, 2C1.1(b)(2)

The Defendant's guilty plea to three public corruption offenses requires the application of U.S.S.G. §2C1.1. Section 2C1.1(b)(2) provides that the offense level shall be increased depending upon the financial severity of the bribery and/or extortion scheme. U.S.S.G. §2C1.1(b). The Sentencing Guidelines measure financial severity in four ways: 1) the bribe payment, 2) the value of anything obtained or to be obtained by a public official, 3) the value of the loss to the Government, or 4) the value of the benefit received or to be received by the briber.[1]

---

[1] (b) Specific Offense Characteristics

> (2) If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

U.S.S.G. §2C1.1(b)(2).

7

The bribery guideline is increased by the greatest of these measures. *United States v. Kant*, 946 F.2d 247, 269 (4th Cir. 1991) ("the benefit from the bribe was greater than the amount of the bribe, so the benefit should have been used in calculating the upward adjustment"); *United States v. Huff*, 609 F.3d 1240, 1246 (11th Cir. 2010) ("the bribe amount would not be the proper measure of loss here under § 2C1.1, which requires the imposition of whichever is greater: the value gained by the payer of the bribe or the recipient of the bribe").

When the case involves more than one incident of bribery or extortion, the Application Notes advise that the value of each bribe or extortion be "determined separately for each incident and then added together." U.S.S.C. §2C1.1, App. Note 2. Pursuant to this Guideline, the U.S. Probation Office calculated the loss by adding the $2,970,266 in profits Company #1 as the "benefit to the briber" to the $50,000 in cash received by the Defendant from 10 or more business persons. PSR ¶¶56, 57, 58. The defense contests both figures. Each will be addressed in turn.

### 1.) Benefit to be Received by Company #1

As an initial matter, the Court must determine the meaning of "benefit received or to be received" under §2C1.1(b)(2). The Application Notes provide the following explanation and examples:

> The value of "the benefit received or to be received" means the net value of such benefit. Examples: (A) A Government employee, in return for a $500 bribe, reduces the price of a piece of surplus property offered for sale by the government from $10,000 to $2,000; the value of the benefit received is $8,000. (B) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000. Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received. In the preceding examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.

U.S.S.G. §2C1.1, App. Note 3.

The Government bears the burden of showing the "benefit received or to be received." *United States v. Pena*, 268 F.3d 215, 220 (3d Cir. 2001). "The threshold for the causation inquiry for § 2C1.1 calculations is relatively low." *United States v. Kinter*, 235 F.3d 192, 198 (4th Cir. 2000) *abrogated on other grounds by United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011) (same). Moreover, "the question of causation is different, in criminal as in civil law, from

9

the question of quantification." *United States v. Sapoznik*, 161 F.3d 1117, 1118–19 (7th Cir.1998) ("To show that the bribes benefited the people paying them-here the operators of gambling dens and their gangster backers-it is enough for the Government to show that the bribes facilitated the gambling operations").

The evidence offered and agreed to at the guilty plea proceeding makes clear that Company #1 made numerous payments over years to the Defendant so that he would use his position as Mayor of the City of Scranton to ensure that Company #1 kept the tax and refuse fee collection contracts.Doc. 13, p. 23-25. Furthermore, as Mayor, the Defendant had authority to influence and cause the termination of Company #1's contract with the City. Doc. 13, p. 25.

The evidence obtained post-guilty plea suggests that the Lackawanna County Tax Claim Bureau offered an inexpensive alternative to contracting with Company #1, which would have saved the City of Scranton substantially. PRS ¶14-20. The evidence also suggests that the prospect of a cheaper alternative stalled at the Mayor's Office under circumstances suggesting that the prospect was not acted on so that Company #1 would continue to benefit from the

contracts. PSR ¶ 20. The totality of this evidence suggests that the "benefit to be received" by Company #1 was the "net value" of the contracts to Company #1. U.S.S.G. §2C1.1, App. Note 3.

The PSR calculated the "net value" to Company #1 as $2.9 million. PSR ¶46. The Third Circuit has provided instructions regarding how the "benefit received" is calculated where "illegal bribes are used to obtain what would otherwise be legal contracts." *United States v. Lianidis*, 599 F.3d 273, 275 (3d Cir. 2010). The court held that the "benefit received" under U.S.S.G. §2C1.1(b)(2) is "the net value, minus direct costs, accruing to the entity on whose behalf the defendant paid the bribe." *Lianidis*, 599 F.2d at 275. The Third Circuit adopted the explanation from the Fifth Circuit, which differentiated between "direct costs"[2] and "indirect or fixed costs."[3] *Id.*, *United States v. Landers*, 68

---

[2] "Direct costs" are "all variable costs that can be specifically identified as costs of performing a contract. This might include, for example, transportation costs for the goods in question. Thus, variable overhead costs that cannot easily be identified to a specific contract are not direct costs. This definition differs from the accounting term 'direct costs' in that it excludes those variable costs that cannot readily be apportioned to the contract." Landers, 68 F.3d at 884 n. 2.

[3] "Indirect" or "fixed" costs are "the costs incurred independently of output. For example, rent and debt obligations are costs a business incurs no matter how many contracts it receives. For the most part,

F.3d 882 (5th Cir. 1995). The Third Circuit succinctly explained that "direct costs" are those which "are easily attributed to the specific contract at issue." *Lianidis*, 599 F.3d at 281.  In this case, the $2.9 million figure provided by the U.S. Probation Office reflects "net value" of the tax collection and refuse collection contracts accruing to Company #1, minus the direct costs of administering these contracts for the years in question. The "net value" determination is consistent with *Lianidis* and *Landers*. If necessary, the Government is prepared to offer evidence at a proceeding reflecting this net value.

### 2.) $50,000 in Cash

The defense objects to inclusion of the $50,000 in the loss calculation. They argue, generally, that instead the loss amount should be $18,000.  Sentencing Memorandum of Defendant, filed on January 17, 2020.  The figure appears to be based on the cash delivered to the Defendant during the undercover investigations.  The U.S. Probation Office accurately included the $50,000 in the loss calculation.

---

overhead costs are fixed costs. The marginal increase in variable overhead costs from a wrongfully obtained contract is normally so de minimis that accounting for them during sentencing would be impractical." *Id.* at 885 n. 3.

As noted above, in the context of bribery and public corruption offenses "loss" includes the "value of anything obtained or to be obtained by a public official." U.S.S.G. §2C1.1(b)(2). In this case, the Defendant received "over $50,000 in cash from over ten business persons who sought to corruptly influence him during his years as Mayor." Doc. 13, p. 31. These facts admitted to at the guilty plea suffice to support inclusion of the $50,000 in the loss calculation. U.S.S.G. §2C1.1(b)(2).

The value of what received in return for this $50,000 cannot not be readily determined. So, consistent with the commentary to §2C1.1, the Court should consider the value of what is given. *Id.* at Background ("In a case in which the value of the bribe exceeds the value of the benefit, or in which the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such a bribe expected something in return that would be worth more than the value of the bribe.")

B.   **Leadership Adjustment - U.S.S.G. §3B1.1(a)**

Section 3B1.1(a) of the Sentencing Guidelines allows for up to a four-level increase of the offense level, where the defendant "was an

13

organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG §3B1.1(a).

The application notes advise what a court should consider:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

USSG §3B1.1, app. note 4.

The defense objects to the leadership adjustment. Doc. 18, p. 5. The PSR seems to have applied this adjustment based upon the information provided in the statement of offense conduct. This adjustment can be supported by evidence that the Defendant utilized a network of Government employees, campaign volunteers, and contractors to perpetuate his corrupt activities.

### C. High-Level Decision Making - U.S.S.G. §2C1.1(b)(3)

The Sentencing Guidelines require a four-level increase if the "offense involved an elected public official or any public official in a high-level decision-making or sensitive position." U.S.S.G. §2C1.1(b)(3).

The Defendant clearly qualifies as an elected public official. Therefore, the objection should be denied.

In addition, the Defendant would also qualify as a public official in a "high-level decision-making or sensitive position." Those public officials are defined in the application notes as officials whose position is "characterized by a direct authority to make decisions for, or on behalf of, a Government department, agency, or other Government entity, or by a substantial influence over the decision-making process." *Id.*, App. Note 4(A). The Defendant's role in city Government makes him a high-level decision maker.

### D. Acceptance of Responsibility – U.S.S.G. §3E1.1

To qualify for a decrease under §3E1.1(a), the Guidelines require the defendant to "clearly demonstrat[e]" that he has accepted responsibility for his offense. U.S.S.G. §3E1.1(a). When deciding whether it is appropriate, a trial court should access the "totality of the situation" when determining whether the defendant accepted responsibility. *United States v. Cohen*, 171 F.3d 796, 806 (3d Cir. 1999) quoting *United States v. McDowell*, 888 F.2d 285, n.2 (3d Cir. 1989). When accessing the totality of the situation, the application notes and

case law suggest looking to a variety of factors. Under the current circumstances, the Defendant's general request that the Government establish certain Guideline enhancements is not inconsistent with acceptance of responsibility. Therefore, at this time, the Government recommends awarding the Defendant the three-level reduction.

IV. CONCLUSION

The Government requests that the Court consider the above authority and argument when resolving the defense objections to the Presentence Report.

Respectfully submitted,

DAVID J. FREED
UNITED STATES ATTORNEY

/s/ Michelle Olshefski
Michelle Olshefski
Assistant United States Attorney
Atty ID No. PA 79643
235 North Washington Avenue
Scranton, PA 18503
(570) 348-2800 (Office)

/s/ Michael A. Consiglio
Michael A. Consiglio
Assistant United States Attorney
Atty ID No. PA 76103

228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108
(717) 221-4482 (Office)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 3:19-CR-208 |
| | ) | |
| v. | ) | (J Mannion) |
| | ) | |
| WILLIAM L. COURTRIGHT | ) | |
| Defendant | ) | Filed Under Seal |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on February 7, 2020, she served a copy of the attached:

**GOVERNMENT SENTENCING MEMORANDUM REGARDING DEFENSE OBJECTIONS TO PRESENTENCE REPORT**

via E-Mail upon the following:

Paul J. Walker, Esquire

/s/ Christina M. Nihen
CHRISTINA M. NIHEN
Legal Assistant

18