IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

FEB 1 0 2020

PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | : | |
| v. | : | 3: CR – 19 -208 |
| WILLIAM L. COURTRIGHT | : | (JUDGE MANNION) |

### SENTENCING MEMORANDUM OF DEFENDANT WILLIAM L. COURTRIGHT IN SUPPORT OF OBJECTIONS TO PRESENTENCE REPORT

**I.  INTRODUCTION.**

This Sentencing Memorandum is submitted to the Court pursuant to Order of Court dated and entered December, 17, 2019. In this matter, on July 1, 2019, a three-count Information was filed charging William L. Courtright in Count 1 with Conspiracy to : (1) Obstruct Commerce by Extortion Through the Wrongful Use of Fear of Economic Harm [18 U.S.C. § 1951 (a)]; (2) Obstruct Commerce by Extortion Under Color of Official Right [18 U.S.C. 1951 (a)], and (3) Bribery Concerning Programs Receiving Federal Funds [18 U.S.C. 666(a)(1)(B0], all between February 1, 2014, and January 9, 2019, in violation of 18 U.S.C. § 371. In Count 2, he was charged with Attempt to Obstruct Commerce by Extortion Under Color of Official Right on January 4, 2018, in violation of 18 U.S.C. § 1951(a). In Count 3, the defendant was charged with Bribery Concerning Programs Receiving Federal Funds of November 17, 2017, in violation of 18 U.S.C. § 666(a)(1)(B). The Information additionally has a forfeiture component pursuant to 18 U.S.C. §§ 982(a)(1)(C), and 28 U.S.C. § 2461(c).

On July 2, 2019, Courtright appeared before Honorable Chief Judge Christopher C. Connor, and pled guilty to all counts pursuant to a plea agreement.

On July 10, 2019, the case was reassigned to this Court the Honorable Malachy E. Mannion.

1

A Presentence Report (PSR) was prepared by the United States Probation Office on October 22, 20-19. Thereafter, the Defendant, through Counsel, prepared and filed "Objections to presentence report of William Courtright," challenging, primarily, the calculation of economic loss under the United States Sentencing Guidelines, pursuant to Guidelines 2B1.1 and 2C1.1.  See United States Sentencing Guidelines. The Defense also objected to other findings and conclusions set forth in the Presentence Report, as they pertain generally to the imposition of an appropriate sentence, and specifically, as the predicate basis upon which the economic loss calculation set forth in the Presentence Report was founded.  The Defendant incorporates by reference the Objection to Presentence report of William Courtright, as filed herein.

As the Court knows, its overarching mandate is to impose the minimum sentence sufficient to Serve the purposes of sentencing.  Kimbrough v. United States, 128 S. CT. 558, 570 (2007).  Although the United States Sentencing Guidelines are no longer mandatory, they continue to play a significant and central role in federal sentencing.  This is particularly true in economic loss determinations and calculations, because such calculations can result in significant sentencing increases.  William Courtright's history and characteristics, and the context of the offense, show that a below-guidelines sentence will more than fulfill the purposes of sentencing under all of the facts and circumstances of this case.  The purpose of this Memorandum is to address the objections lodged to the Presentence Report.

## II. The Law of Sentencing and Argument.

Pursuant to the mandates and requirements of United States v. Booker, 543 U.S. 220 (2005), sentencing courts must engage in a three-step process in sentencing and in the imposition of an appropriate sentence as follows:

(1) Properly calculate the Guidelines range;

(2) Rule on any departure motions made under the Guidelines; and

> (3) Exercise their discretion by choosing a sentence in light of all relevant Section 3553(a) sentencing factors, "regardless [of] whether [the chosen sentence] varies from the sentence calculated under the Guidelines."

United States v. Gunter, 462 F. 3d 237, 247 (3rd Cir. 2006); see Rita v. United States, 127 S. Ct. 2456 (2007); United States v. Cooper, 437 F. 3d 324 (3rd Cir. 2006).

The Guidelines are a "starting Point and the initial benchmark" for the sentence. Gall v. United States, 128 S. Ct. 586, 596 (2007). Subsequent to calculating the Guidelines in a particular case, the Court must consider all pertinent factors set forth in Section 3553 (a), with no special weight afforded the Guidelines or any other factor. See id. At 596-97. As noted above, the Court's "overarching statutory mandate" is to impose a sentence "sufficient, but not greater than necessary," to accomplish the four purposes of sentencing set forth in Section 3553(a)(2)- retribution, deterrence, incapacitation, and rehabilitation. Kimbrough, 128 S. Ct. at 570 (citing 18 U.S.C. § 3553(a)); Rita, 127 S. Ct. at 2467 (parsimony provision is a "requirement" of Section 3553(a)); Gunter, 462 F. 3d at 244 n.9. In determining the sentence minimally-sufficient to accomplish the purposes of sentencing, the Court must consider several factors listed in Section 3553(a):

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
>
> (3) The kinds of sentences available (e.g., whether probation is prohibited, or a mandatory minimum term of imprisonment is required by statute);
>
> (4) The sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
>
> (5) Any relevant "policy statements" promulgated by the Commission;
>
> (6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) The need to provide restitution to any victims of the offense.

18 U.S.C § 3553(a). As indicated above, this Memorandum addresses the pending Objections to the Presentence report. Counsel for the Defendant reserves the right to address any and all Section 3553(a) factors at time of sentencing.

In this matter, the Defendant has files objections to the findings of the Probation Office regarding the issue of calculation of economic loss under U.S.S. G § 2B1.1 and 2C1.1. The specific objections are set forth in Paragraphs 6.7 and 8 of the Objections to Presentence Report as filed herein. The Objections to presentence report are incorporated by reference. The objections to economic loss calculations address the findings and conclusions set forth in the presentence report wherein the Probation Office used the gross profits of Northeast Revenue Service for 2015 through June 30, 2019, in the total amount of $2,970, 266.00 as the total amount of loss for purposes of guidelines economic loss computation, as the loss attributable to the Defendant Courtright,, under U.S.S.G 2B1.1 and 2C1.1. See PSR, Paragraph. The Probation Office then found and concluded that the benefit received by Northeast Revenue Services in return for illegal payments to Courtright was the total of $2,970,266 in gross profits from contracts that existed solely because of the defendant's corrupt conduct. See PSR, Paragraph 55. The Probation Office used this $2.9 million dollar figure and added it to the $50,000.00 figure set forth in Objection # 8 and Paragraph 56 of the Presentence Report to arrive at the conclusion that for guideline purposes the loss amount was at least $3,020,266, with a corresponding 16 level increase in the guidelines. See PSR Paragraph 58, applying USSG § 2B1.1 (b)(1)(I). As indicated in the Objections to presentence report, we disagree with that analysis, finding and conclusion.

As confirmed by the Plea Agreement, the United States Sentencing Guidelines, which took effect on November 1, 1981, and amendments, as interpreted by U.S. v. Booker, 543 U.S. 220 (2005), are indeed applicable herein. Moreover, as confirmed by caselaw, sentencing by this District Court and all of our courts are in the Third Circuit follow Booker and its progeny. See U.S. v. Smalley, 517 F. 3d

208, 211-212 (3rd Cir. 2008). In calculating guideline ranges, the Court must make findings pertinent to the guidelines calculations by applying a preponderance of the evidence standard. See U.S. vs. Grier, 475 F. 3d 556 (3rd Cir. 2007). We submit that in this case, the findings, conclusions and guidelines applications in Paragraphs 46, 55, 56 and 58 of the PSR are arbitrary and improper and result in an egregious enhancement of the guideline range without lawful predicated. The amounts set forth by the Probation Office are set forth without discussion and analysis, as well as sufficient factual and legal basis.

The Defense submits that when a Court is calculating sentencing guidelines, economic loss under U.S.S.G § 2B1.1 and §2C1.1 is one of the most important calculations in that same has a significant effect on the overall sentence that a defendant receives, and requires careful complicated and sophisticated analysis. U.S. v. Titchell, 261 F.2d 348 (3d Cir. 2001). Legal scholars have consistently acknowledged the importance of economic loss analysis, because of the drastic impact it has on the length of a particular sentence. See Peter J. Henning, White Collar Crime Sentences After Booker, 37 McGeorge Law Rev. 757 (2006); Losing the Loss Calculation: Toward a Max Just Sentencing Regime in White Collar Criminal Cases 59 Duke L.T. 1001 (2010).

In this case the Probation Office merely used the total gross profits from the contracts which the City of Scranton had with Northeast Revenue Services for calendar years 2015 through June 30, 2019, in finding that a total of $2,290,266 as a loss figure, and concluded, without sufficient factual foundation, that the contracts existed solely because of the defendant's corrupt conduct. See PSR Paragraph 55. This conclusion completely belies the fact that the contract between Northeast Revenue Services and the City of Scranton existed prior to William Courtright being elected Mayor, and that there were two addendums to the original 2011 contact entered into by the City of Scranton, with Northeast Revenue Services, prior to Mayor Courtright being elected Mayor. This unfounded conclusion and improper

application of the Guidelines is completely contrary to the Commentary and Application Notes as set forth in the Sentencing Guidelines.

Pursuant to the Commentary to USSG § 2B1.1, also applicable to USSG § 2C1.1, the Application Note provides, inter alia, as follows:

> Loss Under Subsection (b) (1). – This application note applies to the determination of loss under subsection (b)(1).
> (A) General Rule,. – Subject to the exclusions in subdivision (D), loss Is the greater of actual loss or intended loss.
>
> (i) **Actual loss.** – "*Actual loss*" means the reasonable foreseeable pecuniary harm that resulted from the offense.
> (ii) <u>Intended Loss</u>. – "*Intended loss*" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would habe been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).
> (iii) <u>Pecuniary Harm</u>. – "*Pecuniary harm*" means harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm.
> (iv) <u>Reasonable Foreseeable Pecuniary Harm</u>. – For purposes of this guideline, "*reasonably foreseeable pecuniary harm*" means pecuniary harm that the defendant knew or, under the circumstances, reasonable should have known, was a potential result of the offense.

<u>See USSG § 2B1.1, Application Notes 3, Commentary</u>.

In this case the Probation Office did not conduct an analysis of "Actual loss" and "intended loss," but merely totaled the gross receipts of Northeast Revenue Service for the stated years, even though the contract for the City of Scranton was in existence prior to the time that William Courtright became Mayor. Furthermore, there was no indication or analysis of any alternative costs and expenses of retaining a different firm or entity to collect delinquent taxes and refuse fees. To that end, there was no effort to determine economic loss, actual or intended, applicable to this case. Finally, the only evidence or attempted factual predicate for the findings contained in the PSR related to economic loss and quid pro quo for the retention of the contract by Northeast Revenue, consisted of the uncorroborated,

6

gratuitous and unsolicited opinions and conclusions of Ronald Koldjeski, former Director of the Lackawanna County Tax Claim Bureau. These uncorroborated statements and conclusions as set forth in the PSR, and as objected to by the Defense, emanate from a politically driven source who admittedly has a deep dislike for Courtright and Rodgers, the Owner of Northeast Revenue Services.

We submit that in Guidelines computations the Probation Office and the Government would bear the burden of proving the amount of loss to be used in the loss computations for purposes of guidelines ranges, and that there is no evidence to support a finding of loss in the amount which would justify the addition of 16 points in the calculation of loss under the Guidelines. See United States v. Diallo, 710 F. 3d 147 (#rd Cir. 2013); United States v. Titchill, 261 F. 3d 348 (3rd Cir. 2001).

The Defense submits that the proper amount of loss computation under the sentencing guidelines in this case would be the amount of $18,000.00, as set forth in the Criminal Information filed herein, and to which Mr. Courtright entered a plea of guilty. As indicated there was no deep analysis as to economic loss conducted herein, and no attempt to ascertain actual or intended economic loss. Moreover, there was no predicate factual foundation to establish that Courtright did accept in excess of $50,000.00 in payments as alleged in the PSR. Without adequate foundation, any finding warranting a 16 point enhancement is improper. We submit that under the Commentary to USSG 2B1.1, Application Notes 3 (B) that the loss should be determined to be the amount of the gain that resulted from the offenses, as an alternative measure of loss should be used because the amount of loss cannot be reasonable determined from the PSR and predicate analysis of the loss. See USSG § 2B1.1, Commentary, Application Notes 3(B).

    III.    **Conclusion.**

For the reasons set forth herein, the Defense requests that the Court grant and approve the Objections to the presentence report as filed herein and to set the loss calculations under the Sentencing Guidelines at the appropriate level. Alternatively, the Defense requests that the Court set an

evidentiary hearing on the appropriate economic loss calculation to be used for sentencing purposes herein.

Respectfully submitted,

*Paul Walker*
PAUL J. WALKER, ESQUIRE
Attorney for Defendant, William J. Courtright