UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:CR-19-208 |
| WILLIAM L. COURTRIGHT, | : | (JUDGE MANNION) |
| Defendant | : | |

**MEMORANDUM**

Presently before the court are the defendant William L. Courtright's ("Courtright") objections, (Doc. 18, at 4-5), to the final Presentence Investigation Report ("PSR"), (Doc. 17), prepared by the United States Probation Office. The objections have been fully briefed in the parties' sentencing memoranda. For the reasons set forth below, Courtright's objections to Paragraphs 9, 13-21, 25, and 61 will be **OVERRULED**. The objections to Paragraphs 46, 55, 56 will be **SUSTAINED in part** and the court will reserve further ruling on these objections until it can conduct an evidentiary hearing.[1]

---

[1] By order dated December 17, 2019, the court summarily granted Courtright's objection to Paragraph 5, and summarily denied his objection to Paragraph 59. (Doc. 20).

## I.     BACKGROUND

On July 2, 2019, Courtright waived indictment and entered a guilty plea to a three-count Information, stemming from the use of his position as the Mayor of the City of Scranton for profit by, *inter alia*, accepting bribes in exchange for the ability to do business with the City of Scranton. Count 1 of the Information charges him with engaging in a criminal conspiracy to defraud the United States with three criminal objectives: (1) obstruct commerce by extortion through the wrongful use of fear of economic harm; (2) obstruct commerce by extortion under color of official right; and (3) bribery concerning programs receiving federal funds. In Count 2, Courtright was charged with attempting to obstruct commerce by extortion under color of official right. Finally, Count 3 charged Courtright with bribery concerning programs receiving federal funds. (Doc. 1).

A draft PSR was issued to the parties on October 31, 2019, to which Courtright filed objections. (Doc. 16). The final PSR was issued on November 27, 2019. (Doc. 17). By order dated December 17, 2019, the court set a briefing schedule for the parties to address Courtright's objections. (Doc. 20). After receiving extensions, both parties filed their sentencing memoranda, and the matter is now ripe for this court's review. (Doc. 26; Doc. 28).

## II. DISCUSSION

The PSR determined that the base offense level for the defendant, as a public official, was fourteen under the United States Sentencing Guidelines ("Guidelines") §2C1.1(a)(1). The PSR also determined that the following enhancements were applicable: (1) a two-level enhancement under §2C1.1(b)(1) because the offenses involved multiple bribes; (2) a four-level enhancement under §2C1.1(b)(3) because Courtright was in a "high-level decision-making or sensitive position"; (3) a four-level enhancement under §3B1.1(a) for being "an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive"; and (4) a sixteen-level enhancement under §2C1.1(b)(2) and §2B1.1 because the benefit received in return for payment was at least $3,020,266.

Courtright's primary objection relates to the sixteen-level enhancement under §2C1.1(b)(2); however, he additionally objects to the four-level enhancement under §3B1.1(a), as well as some of the PSR's descriptions of the offenses. The court will address each in turn.

### a. *Objections to the Sixteen-Level Enhancement under §2C1.1(b)*

Courtright objects to the following Paragraphs in the PSR, insofar as they relate to the sixteen-level enhancement:

> 46. Northeast Revenue Services [("Northeast")] had gross profits of $354,033 in 2015; $525,353 in 2016; $524,767 in 2017; $929,567 in 2018; and $636,546 in 2019 (through June 30), for a total of $2,970,266. The City of Scranton received federal funds in excess of $10,000.
>
> 55. The benefit received by Northeast Revenue Services in return for illegal payments to Courtright was a total of $2,970,266 in gross profits from contracts that existed solely because of the defendant's corrupt conduct.
>
> 56. Additionally, Courtright received, directly or through intermediaries, cash payments totaling more than $50,000 from more than 10 businesspersons who sought to corruptly influence him.
>
> 58. The total for guideline purposes is at least $3,020,266. Because this amount is more than $1,500,000, but not more than $3,500,000, a 16-level increase [USSG §2B1.1(b)(1)(I)] is applied.

(Doc. 17, at 13-14).

Courtright contends that the sixteen-level enhancement is inappropriate under §2B1.1(b)(1)(I) because the gross profit Northeast received from its contracts with the City from 2015 to June 20, 2019, should not be counted as a loss figure. He further disagrees that these contracts existed solely as a result of his corrupt conduct. To that end, Courtright emphasizes that Northeast's original contract with the City was signed on August 22, 2011, prior to his election as Mayor in 2014, and was set to expire

on July 31, 2013, with an option for the parties to renew the contract for an additional year. On July 26, 2013, the parties entered an addendum to the contract, which extended the contract for an additional year and provided that the contract would automatically renew for additional one-year periods thereafter, unless terminated by either party via ninety-days written notice.[2] Thus, Courtright stresses that the City's contract with Northeast had already been extended prior to his assumption of office.

Although he acknowledges that the contract was also renewed during his time as Mayor, Courtright observes that "there was no indication or analysis [in the PSR] of any alternative costs and expenses of retaining a different firm or entity to collect delinquent taxes and refuse fees." (Doc. 28, at 6). The only support for the PSR's conclusion that there were less-expensive options, Courtright argues, comes from the uncorroborated statements of a politically-driven source with a deep dislike of Courtright, who was interviewed by the government after the plea hearing. Instead, Courtright argues that the proper figure for computation of loss is $18,000—

---

[2] Per the terms of the original contract, Northeast would collect delinquent taxes owed to the City. On March 19, 2012, the parties entered an addendum to the agreement, providing that contract would also include the collection of delinquent refuse fees. (Doc. 17, at 5-6).

the amount listed in the Information as payment he accepted.[3] Relatedly, Courtright objects to Paragraph 56 and contends there is no factual foundation for the PSR's conclusion that he accepted over $50,000 in payment.

In response, the government notes that the sixteen-level enhancement was applied pursuant to §2C1.1(b), not §2B1.1(b), and argues that, under §2C1.1(b), the enhancement was appropriate.

Section 2C1.1(b)(2) of the Guidelines, entitled "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions," provides,

> If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

---

[3] It is unclear how Courtright arrived at this amount, since the total of the individual payments listed in the Information is $23,000. (Doc. 1, at 9-10). Further, the Information states that Courtright "accepted tens of thousands of dollars in cash and other things of value." (Doc. 1, at 10).

U.S.S.G. §2C1.1(b)(2). Therefore, under this section, there are four figures to consider, the highest of which is to be applied assuming it is over $6,500: (1) the value of the payment made to Courtright; (2) the benefit received by Northwest in return for its payments to Courtright; (3) the value of the things obtained by Courtright or those acting with him; or (4) the loss to the government from the offense. After selecting the highest of these amounts, the court then applies the corresponding enhancement from the chart in §2B1.1(b). Here, the PSR indicates that "the benefit received or to be received" by Northwest is the highest of the four figures.

The comment to §2C1.1 defines "the benefit received or to be received" as "the net value of such benefit." U.S.S.G. §2C1.1, cmt. n.3. With respect to net value, the background in the comment states,

> In determining the net value of the benefit received or to be received, the value of the bribe is not deducted from the gross value of such benefit; the harm is the same regardless of value of the bribe paid to receive the benefit. In a case in which the value of the bribe exceeds the value of the benefit, or in which the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such a bribe expected something in return that would be worth more than the value of the bribe. Moreover, for deterrence purposes, the punishment should be commensurate

with the gain to the payer or the recipient of the bribe, whichever is greater.

*Id.* The Guidelines provide the following examples:

> (A) A government employee, in return for a $500 bribe, reduces the price of a piece of surplus property offered for sale by the government from $10,000 to $2,000; the value of the benefit received is $8,000. (B) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000. Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received. In the preceding examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.

U.S.S.G. §2C1.1, cmt. n.3.

In *United States v. Lianidis*, the Third Circuit, observing that the burden is upon the government to show the benefit received, held that direct costs, but not indirect costs, should be deducted when calculating net value under this section of the Guidelines. 599 F.3d 273, 281 (3d.Cir.2010). Direct costs are the following:

> [A]ll variable costs that can be specifically identified as costs of performing a contract. This might include, for example, transportation costs for the goods in question. Thus, variable overhead costs that cannot easily be identified to a specific contract are not direct costs. This definition differs from the accounting term 'direct costs' in that it excludes those variable costs that cannot readily be apportioned to the contract.

- 8 -

*Id.* (internal quotation marks omitted). Conversely, indirect costs are the following:

> [T]he costs incurred independently of output. For example, rent and debt obligations are costs a business incurs no matter how many contracts it receives. For the most part, overhead costs are fixed costs. The marginal increase in variable overhead costs from a wrongfully obtained contract is normally so de minimis that accounting for them during sentencing would be impractical.

*Id.* (internal quotation marks omitted).

As noted, the PSR suggests that the highest figure for purposes of §2C1.1(b) was the amount of the "benefit received" by Northwest from its payments to Courtright—that is, $2,970,266. The PSR arrived at this figure by totaling the gross profit of Northwest's contracts with the City for the years 2015 through June 30, 2019. Significantly, however, the PSR then adds this figure to one of the other categories, the "value of anything obtained," which it calculates as $50,000: "Courtright received, directly or through intermediaries, cash payments totaling <u>more than</u> $50,000 from more than 10 businesspersons who sought to corruptly influence him." (Doc. 17, at 14). Arriving at a total of $3,020,266, the PSR applied the enhancement from the

table in §2B1.1(b)(1), which it correctly determined was an enhancement of sixteen levels.

Initially, the court observes that the PSR's addition of the "benefit received" figure and the "value of anything obtained" figure is not supported by the Guidelines. It appears that the PSR's justification for the addition of these two figures was based upon the comment to §2C1.1, which states,

> More than One Bribe or Extortion.—Subsection (b)(1) provides an adjustment for offenses involving more than one incident of either bribery or extortion. Related payments that, in essence, constitute a single incident of bribery or extortion (*e.g.*, a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts. In a case involving more than one incident of bribery or extortion, the applicable amounts under subsection (b)(2) (*i.e.*, the greatest of the value of the payment, the benefit received or to be received, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government) are determined separately for each incident and then added together.

U.S.S.G. §2C1.1, cmt. n.2. Although the comment indicates that the applicable amounts under §2C1.1(b)(2) are "added together," it does not direct that the total of each of the four categories—*i.e.*, "value of the payment," "benefit received," "value of anything obtained," and "loss to the government"—are to be added together.

Instead, the comment indicates that the total of each category is to be calculated separately, and the highest the four amounts is to be used in applying the enhancement. In the event that there are multiple figures in the same category—for example, multiple items of value received by the public official—the comment indicates that those figures *within the same category* should be added together and then compared with the others. To read this comment otherwise, would conflict with the text of the section itself, which expressly states that "whichever is greatest" of the four categories is the figure that should be used, as well as the as the Circuit Courts' consistent interpretation of this section. *See, e.g.*, *United States v. Huff*, 609 F.3d 1240 (11th Cir.2010) (affirming the district court's use of the higher benefit received figure instead of the amount of bribe figure); *United States v. Gillam*, 167 F.3d 1273 (9th Cir.1999) (holding the sentence was properly calculated based upon profits realized by bribe payers instead of the lower amount of bribe figure); *United States v. Muhammad*, 120 F.3d 688 (7th Cir.1997) (holding an offense level was properly calculated based upon the $933,000 benefit received figure instead of the $2,500 bribe figure); *United States v. Kant*, 946 F.2d 267, 267 (4th Cir.1991) (holding the adjusted offense level

"should have been calculated on the basis of the benefit to be received from the bribe, rather than the lower figure representing the amount of the bribe").

Therefore, the court will **SUSTAIN in part** Courtright's objections to Paragraphs 46, 55, 56, and 58 insofar as the PSR incorrectly added two of the categories in §2C1.1—the $2,970,266 "benefit received" figure and the $50,000 "value of anything obtained" figure—instead of utilizing the greater amount. In comparing these two categories, the $2,970,266 figure is plainly the higher amount, therefore, should have been used in applying the §2C1.1 enhancement.[4] However, because Courtright challenges the accuracy of both the "benefit received" and the "value of anything obtained" figures, a review of both is appropriate.

With respect to the $2,970,266 figure, the government contends that it is an accurate calculation of the net value of the benefit received by Northeast, which took into account the direct costs of administering the contracts for the years in question. Based upon the record before it, however, the court is unable to determine whether the $2,970,266 figure is accurate,

---

[4] This holding does not, at present, impact the sixteen-level enhancement, since a figure of $2,970,266 is still more than $1,500,000 and less than $3,500,000 and, under §2B1.1(b)(1)(I), still merits an enhancement of sixteen levels.

insofar as there is no information in the record as to when Northeast made its first payment to Courtright and, thus, it is not apparent whether Northeast's profits during the entirety of Courtright's tenure ought to be considered. Further, the record does not reflect whether the necessary direct costs of performing what otherwise would have been legitimate contracts were deducted in accordance with *Lianidis*, although the PSR's use of the term "gross profit" seems to suggest that they were not. For its part, the government indicates that it is prepared to present evidence demonstrating that the $2,970,266 amount is an accurate figure; however, at this juncture, the court has not seen this evidence and is therefore unable to make a determination as to its accuracy. Thus, for purposes of obtaining the necessary information to calculate an accurate figure under §2C1.1, the court will hold an evidentiary hearing wherein the burden will be upon the government to present evidence supporting its calculation of the "benefit received" figure. *See Lianidis*, 599 F.3d at 278.

As to the $50,000, the court is similarly unable to make a determination as to whether it is an accurate calculation of the "value of anything obtained" by Courtright. Although this figure may ultimately be immaterial in light of the fact that it is less than the "benefit received" figure, both parties will be

permitted to present whatever evidence they see fit with respect to its proper calculation. Accordingly, the court will reserve any further ruling on Courtright's objections to Paragraphs 46, 55, 56, and 58 until it can convene an evidentiary hearing for purposes of determining the appropriate figure to be used in applying the enhancement under §2C1.1.[5]

### b. *Objections to Leadership Enhancement*

Courtright also objects to the four-level enhancement under §3B1.1(a), set forth in Paragraph 61, for his role as "an organizer or leader of criminal activity that involved more than five participants or was otherwise extensive." U.S.S.G. §3B1.1(a). A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. §3B1.1, cmt. n.1. The comment to §3B1.1 states,

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.
>
> . . .

---

[5] As noted, Courtright's objections reflect his belief that the sixteen-level enhancement was applied pursuant to §2B1.1, instead of §2C1.1(b). Thus, although he has not presented written argument on the accuracy of the "benefit received" or "value of anything obtained" figures, he will have the opportunity to do so at the evidentiary hearing.

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense

U.S.S.G. §3B1.1, cmt., n.2-n.4.

As the PSR sets forth, the criminal activity described by the government during the plea colloquy, and to which Courtright agreed, spanned several years, involved a network of City employees, campaign volunteers, contractors, and businesspeople, and affected the City's contracting processes. The PSR specifically identifies well over five separate individuals who can be classified as "participants" in that they were also criminally responsible for the commission of the offenses. Thus, this enhancement is justified.

Moreover, the enhancement is appropriate given Courtright's otherwise extensive role in the offense. Courtright was integral to the scheme as neither he nor his campaign would have received the contributions and

kickbacks, in quantity or in the amount that they were able to procure, without Courtright's direction, participation, and recruitment of accomplices. Although there were doubtless other beneficiaries of the scheme, Courtright's role was integral, as he stood to receive the fruits of the crimes in form of both cash and contributions to his campaign. *See* [United States v. Spencer, 799 Fed.App'x 120, 123 (3d Cir.2020)](#) (upholding a four-level enhancement under §3B1.1(a) in light of "extensive evidence" that the defendant, the former mayor of Reading, "directed and approved his staff's unlawful activities"). Therefore, an enhancement under §3B1.1(a) is appropriate due to his role as a leader of a criminal scheme that involved well over five participants and because of Courtright's role in the offense was extensive. Accordingly, Courtright's objection to the four-level enhancement under §3B1.1(a) in Paragraph 61 of the PSR is **OVERRULED**.

    **c. *Remaining Objections***

Courtright objects to Paragraphs 9 and 13 to the extent they state that "there was a *quid pro quo* to maintain the City's contract with Northeast Revenue Services," and that he "accepted funds to corruptly influence his official action to maintain the City's contract with Northeast." (Doc. 18, at 4). Courtright also objects to Paragraphs 14-21, which pertain to the

investigation into the crimes charged in the Information, on the basis that he has no knowledge of the declarations contained in them. Finally, Courtright objects, without explanation, to Paragraph 25, which contains a description of Courtright's actions that were the basis of Count I.

The objections to Paragraphs 14-21 are **OVERRULED** as they do not indicate that Courtright had personal knowledge of the events described in them and, further, as the addendum to the PSR observes, they have no impact on the calculation of his guideline imprisonment range. The objection to Paragraphs 9, 13, and 25 are likewise **OVERRULED**, since Courtright previously agreed to this information during the guilty plea hearing, and because he does not provide any factual or legal basis for these objections. *See* Doc. 13, at 23-28.[6]

### III. CONCLUSION

For the reasons set forth above, Courtright's objections to Paragraphs 9, 13-21, 25, and 61 are **OVERRULED**. The objections to Paragraphs 46,

---

[6] Courtright additionally objects to Paragraphs 63, 66, and 95 insofar as they calculate his guideline imprisonment range as 292-365 months imprisonment based upon a total offense level of 40 and a criminal history category of I. These objections have been or will be addressed though the court's disposition on the objections to the Paragraphs that pertain to the calculation of the appropriate offense level.

55, 56, and 58 are **SUSTAINED in part** insofar as the PSR incorrectly combined the $2,970,266 "benefit received" figure with the $50,000 "value of anything obtained" figure; however, the court will reserve further ruling on these objections until it can conduct an evidentiary hearing in order to determine the proper figure for purposes of §2C1.1(b).

                                        s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**DATE: May 13, 2020**
19-208-01