UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:CR-19-208 |
| WILLIAM L. COURTRIGHT, | : | (JUDGE MANNION) |
| Defendant | : | |

## MEMORANDUM

Presently before the court are the defendant William L. Courtright's ("Courtright") objections, (Doc. 18, at 4-5), to the final Presentence Investigation Report ("PSR"), (Doc. 17), prepared by the United States Probation Office. The court, having conducted an evidentiary hearing and being satisfied that the government has met its burden of proof, will **OVERRULE** Courtright's remaining objections to Paragraphs 46, 55, 56, and 58 of the PSR.

### I. BACKGROUND

The court set forth the background of this case in its prior May 13, 2020, memorandum and need not repeat it herein. At issue here are Courtright's outstanding objections to Paragraphs 46, 55, 56, and 58, which the court reserved ruling on until it could conduct an evidentiary hearing. As that

memorandum noted, the outstanding objections relate to the correct calculation and corresponding level of enhancement under §2C1.1(b)(2) of the United States Sentencing Guidelines ("U.S.S.G.").

The court conducted a hearing on August 21, 2020, at which both the government and the defense appeared and were permitted to present witnesses and evidence. The government presented the testimony of three witnesses and both sides submitted exhibits. Accordingly, the matter is now ripe for review.

## II.   DISCUSSION

The PSR provided for a sixteen-level enhancement under §2C1.1(b)(2) and §2B1.1, having calculated that the benefit received in return for payment was at least $3,020,266 as follows:

> 46. Northeast Revenue Services [("Northeast")] had gross profits of $354,033 in 2015; $525,353 in 2016; $524,767 in 2017; $929,567 in 2018; and $636,546 in 2019 (through June 30), for a total of $2,970,266. The City of Scranton received federal funds in excess of $10,000.
>
> 55. The benefit received by Northeast Revenue Services in return for illegal payments to Courtright was a total of $2,970,266 in gross profits from contracts that existed solely because of the defendant's corrupt conduct.

- 2 -

> 56. Additionally, Courtright received, directly or through intermediaries, cash payments totaling more than $50,000 from more than 10 businesspersons who sought to corruptly influence him.
>
> 58. The total for guideline purposes is at least $3,020,266. Because this amount is more than $1,500,000, but not more than $3,500,000, a 16-level increase [USSG §2B1.1(b)(1)(I)] is applied.

(Doc. 17, at 13-14).

The court previously ruled that the $50,000 value of payment figure[1] was inappropriately added to the $2,970,266 "benefit received" figure and that it is the higher of these two figures that must be used for purposes of calculating the enhancement under §2C1.1(b). Therefore, the question presently before the court is whether the "benefit received" figure is indeed a higher figure and, if so, whether that amount is between $1,500,000 and $3,500,000 such that a sixteen-level enhancement pursuant to the table in §2B1.1(b) is appropriate.

With respect to burden as it relates to facts to be relied on in a PSR, the Third Circuit has stated the following:

> Due process does guarantee a convicted criminal defendant the right not to have his sentence based upon "materially false" information. To this extent, the federal rules require the court to hold a hearing to determine disputed issues of fact included in the

---

[1] Courtright additionally objected to the $50,000 figure, which is discussed below.

> presentence report if it wishes to rely upon these facts in sentencing. The purpose of this hearing, though, is to ensure merely that the information relied upon is not materially false. Determining that information is not materially false does not require any type of heightened scrutiny. It is enough that the sentencing judge is convinced that the disputed fact, as alleged, is true. The long history of judicial sentencing and strong policy reasons, including judicial economy, persuade us, as they have the courts of appeals in the second, fourth, and eleventh circuits, that a defendant's rights in sentencing are met by a preponderance of evidence standard. We therefore hold that a sentencing court considering an adjustment of the offense level need only base its determination on the preponderance of the evidence with which it is presented.

*United States v. McDowell*, 888 F.2d 285, 290-91 (3d Cir. 1989) (internal citations omitted). "The sentencing court, though it need not reach a precise figure as to loss [or benefit received], must make a 'reasonable estimate' . . . that must be based on the 'available information' in the record." *United States v. Tupone*, 442 F.3d 145, 156 (3d Cir. 2006); *see also* U.S.S.G. §2B1.1, cmt. n.3(C). Thus, although the figure need only be established by a preponderance of the evidence, "the preponderance standard is not toothless. It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997) (internal quotation marks omitted).

The comment to §2C1.1 defines "the benefit received or to be received" as "the net value of such benefit." U.S.S.G. §2C1.1, cmt. n.3. With respect to net value, the background in the comment states,

> In determining the net value of the benefit received or to be received, the value of the bribe is not deducted from the gross value of such benefit; the harm is the same regardless of value of the bribe paid to receive the benefit. In a case in which the value of the bribe exceeds the value of the benefit, or in which the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such a bribe expected something in return that would be worth more than the value of the bribe. Moreover, for deterrence purposes, the punishment should be commensurate with the gain to the payer or the recipient of the bribe, whichever is greater.

*Id.*

In *United States v. Lianidis*, the Third Circuit, observing that the burden is upon the government to show the benefit received, held that direct costs, but not indirect costs, should be deducted when calculating net value under this section of the Guidelines. 599 F.3d 273, 281 (3d.Cir.2010).

Thus, here, the court must consider whether the government has shown, by a preponderance of the evidence, that the benefit received by Northeast was between $1,500,000 and $3,500,000. In this case, the court finds that the government has done so.

At the hearing, the government presented the testimony of Kevin Foley ("Foley"), a certified public accountant and shareholder of the accounting firm Kronick, Kalada, Berdy and Co. ("KKB"). Foley testified that Northeast has been a client of KKB's since 2015. Foley testified that he was asked to compile data from 2015 through June 30, 2019, on Northeast's total income and direct expenses related to its two contracts with the City of Scranton for collection of delinquent taxes and delinquent refuse bills. The document Foley prepared with this information was introduced as government's Exhibit 6. Foley testified that he cross-referenced the data that he complied in Exhibit 6 with a software program called Quickbooks, which Northeast used to maintain its accounting records, in order to ensure that "every line item on [Exhibit 6] agreed to the end of the year numbers on the computer-generated Quickbooks balance sheet[/]profit and loss statement." (Notes of August 21, 2020 Hearing Testimony ("N.T.") at 58.)

Exhibit 6 indicates that, for the period of time from January 1, 2015, through June 30, 2019, Northeast earned $4,607,133 in total income from its two contracts with the City of Scranton and expended $1,623,117 in direct

costs.[2] Broken down by year, the total income was $368,166 for 2015, $525,353 for 2016, $522,795 for 2017, $931,134 for 2018, and $636,548 for 2019.[3] Thus, deducting the direct costs from the total income, Northeast's net profit, or the benefit it received, from its two contracts with the City of Scranton for that period of time was $2,983,997.[4]

The court, having carefully reviewed the testimony and exhibits, finds that the government has proved by a preponderance of the evidence that the amount of the benefit received by Northeast was $2,983,997 and, because

---

[2] During the hearing, the government explained that it used January 1, 2015, as the starting date due to the fact that it would have taken until approximately July 2014 for the City to withdraw from the otherwise automatically-renewing contract with Northeast and, for purposes of a more straightforward calculation, it chose to begin the calculation at the start of the following year. (N.T. at 102).

[3] Foley noted that the direct costs, which included expenses such as corporate taxes, licenses and permit fees, and internet, IRA, parking, and software expenses, related only to Northeast's Scranton office. (N.T. at 53). Additionally, Foley stated that, at certain points, upon KKB's advice, Northeast changed their methodology in categorizing certain expenses. For example, while Northeast initially included health insurance with its other insurance expenses in 2015, in subsequent years, it broke out health insurance expenses and listed those separately. (N.T. at 54).

[4] The court notes that the income figures set forth in Paragraph 46 of the PSR differ slightly from those in Exhibit 6. Because the court finds that the government has demonstrated the accuracy of the amounts listed in Exhibit 6, it will adopt and utilize those figures for purposes of calculating the amount of the benefit received by Northeast.

this amount is between $1,500,000 and $3,500,000, the sixteen-level enhancement under §2C1.1(b)(2) is appropriate. Accordingly, the objections to Paragraphs 46, 55, and 58 are **OVERRULED.**

As noted, Courtright additionally objected to the $50,000 amount of payment received figure; however, based upon the testimony and exhibits received at the hearing, including the testimony of FBI Special Agent Joseph Noone, the court finds that the government has also demonstrated the accuracy of this figure by a preponderance of the evidence. In any event, however, this figure is immaterial for sentencing guideline purposes as it is less than the amount of the benefit received figure. Accordingly, the objection to Paragraph 56 is likewise **OVERRULED**.[5]

### III. CONCLUSION

For the reasons set forth above, Courtright's objections, (Doc. 18, at 4-5), to Paragraphs 46, 55, 56, and 58 of the PSR, (Doc. 17), are **OVERRULED**. The PSR correctly calculates an offense level of 40, a criminal history category

---

[5] Even were the court to use the likely "loss" to the city, calculated based upon the difference between what the city paid to Northeast and what the evidence at the hearing shows it would have paid to the Lackawanna County Tax Bureau, the amount would still be between the $1,500,000 and $3,500,000 guideline range in §2B1.1(b)(1)(l) (i.e. approximately $1,987,342).

of I, and a suggested sentencing guideline range of 292-365 months' imprisonment.

An appropriate order follows.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 4, 2020**
19-208-02