DJF:MAC/MO

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 3:19-CR-208 |
| | ) | |
| v. | ) | (J MANNION) |
| | ) | |
| WILLIAM L. COURTRIGHT, | ) | |
| Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, David J. Freed, United States Attorney for the Middle District of Pennsylvania, and Michelle Olshefski and Michael Consiglio, Assistant United States Attorneys for the District, hereby submit its sentencing memorandum and recommends a sentence of incarceration with the range of eight to ten years.

I.   PROCEDURAL BACKGROUND

In July 2019, the defendant, William L. Courtright, entered a guilty plea to three corruption charges arising from his conduct as Mayor of the City of Scranton: Count 1 – Conspiracy to commit offense against the United States, in violation of 18 U.S.C. §371; Count 2 – Attempt to obstruct commerce by extortion under color official right in

1

violation of 18 U.S.C. §1951(a); Count 3 – Bribery concerning programs receiving federal funds in violation of 18 U.S.C. §666. Docs. 1, 3, 8. The parties have fully litigated, and this Court has resolved, objections to guideline calculation. Since the resolution of these matters, the defense has sought a three-level reduction of his offense level for acceptance of responsibility. Doc. 47. Sentencing is scheduled for October 2, 2020.

## II. GUIDELINE CALCULATION

This Court has resolved all outstanding sentencing guideline objections in this case. The offense level has been determined to be 40 and the Criminal History Category I. Doc. 42. Under Sentencing Guidelines table, the sentencing range is 292-365 months. Doc. 42.

As was recently raised by the defense in their sentencing memorandum, the Presentence Investigation Report found that three levels for acceptance of responsibility should not be awarded. Doc. 47, PSR ¶65. The United States Probation withheld acceptance of responsibility because of the broad nature of the guideline objections filed by the defense. PSR ¶65.

To qualify for a decrease under §3E1.1(a), the Guidelines require the defendant to "clearly demonstrat[e]" that he has accepted

responsibility for his offense. U.S.S.G. §3E1.1(a). When deciding whether it is appropriate, a trial court should access the "totality of the situation" when determining whether the defendant accepted responsibility. *United States v. Cohen*, 171 F.3d 796, 806 (3d Cir. 1999) quoting *United States v. McDowell*, 888 F.2d 285, n.2 (3d Cir. 1989). While the initial objections to guideline calculation were of concern to the government, it is clear from the subsequent litigation posture of the defense that the Defendant fully accepts responsibility for his role in the crimes. Under the current circumstances, the Defendant's general request that the government establish certain Guideline enhancements is not inconsistent with acceptance of responsibility. Therefore, the Government recommends awarding the Defendant the three-level reduction for acceptance.

If this Court follows the parties' recommendation, the offense level will be reduced to 37 and the sentencing guideline range will be 210-262 months.

## III. SECTION 3553(a) FACTORS

Section 3553(a) lists the following factors for a court to consider when fashioning a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
>
> (5) any pertinent policy statement ... issued by the Sentencing Commission ...;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

The most germane sentencing guidelines factors will be addressed in turn.

1. Nature and Circumstances of the Offense

Details of the crimes were outlined in the comprehensive statement of offense conduct offered during the Defendant's guilty plea proceeding. Doc. 13. In sum, the Defendant -- a high ranking public official who swore to faithfully and truthfully execute his office with fidelity to the people of Scranton -- betrayed his solemn commitment. Even worse, the City of Scranton was in financial crisis and in desperate need of honest and selfless leadership. They got neither. Finally, the crime was perpetrated upon a community that has been plagued by corrupt government. A deeply skeptical community had their confidence in elected officials undermined, again.

However, it should be noted that when he was confronted with the compelling evidence gathered by the FBI, the Defendant accepted responsibility for the criminal conduct, entered a guilty plea to public corruption offenses, and resigned from his office. In doing so, the defendant saved his community from the costs and turmoil of prolonged and contentious litigation.

2. Need for the Sentence

The public has a right to expect that all business conducted on its behalf by public officials is conducted in a fair and honest way. In the same vein, the public has a right to expect that the business of its government is done for the benefit of the community and not for the benefit of the public official. As discussed above, the offense is of the utmost seriousness and there is a need for a substantial sentence to promote respect for the law and to adequately deter other public officials from engaging in the same conduct.

In the recent past, this Court has imposed substantial punishments on public officials who have breached the public trust. Whether they be county commissioners, police officers, or judges, those punishments have ranged from months to decades in prison. Although they did not deter the Defendant, this Court must continue to impose substantial punishments to deter other public officials from engaging in similar conduct.

A dispiriting consequence of public corruption is the divide created between the people and their government. With each breach of trust, the chasm widens. A substantial sentence imposed in a public

proceeding helps to bridge that divide and rebuild trust in honest government.

Yet, such a sentence must be proportionate and equitable to maintain public confidence in the fairness of the judicial system and government in general. It is the position of the United States that a sentence within the 210-262 guideline range is greater than necessary to achieve these goals. Rather, it is submitted that a sentence suggested by the government is reasonable under all of the circumstance of this case.

3. Sentencing Disparity

The courts have long recognized that sentencing is an individualized endeavor. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011)(quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Nevertheless, Section 3553(a) requires that a court guard

against unwarranted sentencing disparities between similarly situated individuals.

The courts have navigated between these competing sentencing objectives by looking to the similarities between defendants for guidance. *United States v. King*, 604 F.3d 125, 145 (3d Cir.2010) ("[S]entencing disparities are unreasonable only when the defendants are similarly situated."). When comparing defendants to determine an appropriate sentence, a party must "show[] that other defendants' circumstances exactly paralleled his, and a court should not consider sentences imposed on defendants in other cases in the absence of such a showing by a party." *United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020)(quoting *United States v. Iglesias*, 535 F.3d 150, 161 n.7 (3d Cir. 2008)).

The Defendant has pointed to the sentences imposed on two mayors in Pennsylvania who were convicted of similar public corruption offenses: Mayor Ed Pawlowski of Allentown and Mayor Vaughn Spencer of Reading. Like the Defendant, these mayors corrupted their offices to their financial benefit, received bribes and kickbacks from a variety of vendors, and were convicted for their involvement in a variety of

8

corrupt schemes. However, comparing the relative culpability of each corrupt mayor is difficult and does not rise to the "exactly parallel" standard. *Lacerda*, 958 F.3d at 215.

      a. Reading Mayor Vaughn Spencer

Former Reading Mayor Spencer was convicted of involvement in three corrupt schemes. *United States v. Spencer*, No. 5:17-CR-391 (E.D. Pa. 2017). The first involved his receipt of thousands of dollars in campaign contributions from an engineering firm, T&M Associates, in *quid pro quo* exchange for the mayor's involvement in awarding contacts for the firm. *Id.* at Doc. 185 (Court Memorandum in support or Rule 29 Order); Doc. 175 (Government Sentencing Memorandum). The bribery payments were a few thousand dollars, while the value of the contracts at issue were valued at $205,000, $190,000, $227,000, and $472,000. *Id.* at p. 2-4.

The second fraud scheme involved another engineering firm, McTish Kunkel & Associates. *Id.* Doc. 175. Similarly, the mayor was convicted of accepting thousands of dollars in campaign contributions in *quid pro quo* exchange for assisting the firm obtain engineering contracts. *Id.* at p. 5. While one of the road reconstruction contracts was

9

purportedly worth millions, the bribing firm did not win the contract. *Id.* at 6. They did receive preferential treatment for a $7,000 contract and for subcontract worth $92,000. *Id.* at 7.

The third scheme was a bribe paid to repeal a local rule that limited individual campaign donations. *Id.* at 7-8. By repealing the statute, the mayor would have been able to keep approximately a $100,000 in campaign contributions that would have otherwise been prohibited. *Id.* at 7.

The schemes of Mayors Spencer and Courtright are similar in many regards, most notably that city contracting was influenced to reward those who financially benefited the mayor. Yet, they differ in material ways. As was made clear during prior proceedings in this case, the Defendant's conduct appears to have cost the City of Scranton over $1,000,000 in lost tax revenues, while Mayor Spencer does not appear to have cost the City of Reading any lost revenue. However, the Defendant did not work to actually change laws to facilitate his corruption, while Mayor Spencer tried to institutionalize his corrupt practices by eliminating good government legislation. On balance, it is difficult to compare these corrupt mayors relative criminality.

Finally, a substantial difference between the two mayors is how their cases were resolved. The Defendant entered a guilty plea to his crimes, while Mayor Spencer vigorously challenged the charges which resulted in a multi-week jury trial.

b. Allentown Mayor Ed Pawlowski

Like Mayor Spencer, the former Mayor of Allentown fought the allegations of corruption. During a six-week jury trial, the government presented evidence of nine different pay-to-play bribe schemes. *United States v. Pawlowski, et al.*, No. 5:17-CR-390 (E.D.Pa 2017) at Doc. 255 (Court Memorandum in support of Rule 29 Order). The jury acquitted the mayor of the charges associated with one of those corruption schemes. However, the defendant was convicted of the other eight, including expediting zoning for a real estate developer, steering contracts to Northeast Revenue Service, and steering contracts to other city vendors in exchange for campaign contributions and other things of value. *Id.* The substance of each corruption allegation is too in depth for meaningful comparison to the present case. Yet, in many respects the sale of office to vendors who supported him with campaign

contributions and other things of value is strikingly similar to the Defendant's case.

A substantial difference between the two, however, is a comparison of the efforts taken to conceal their corrupt activities. Mayor Pawlowski tried thwart law enforcement surveillance by using "burner" phones, wiping electronic devices, passing handwritten notes to vendors with dollar figures to avoid detection by audio surveillance, etc. *Id.* at Doc. 242 (Order of Court regarding guideline objections). The Defendant's efforts to conceal his corruption did not rise to this level.

    c. Other Mayors

In support of their position for a variance, the defense has used the sentences imposed in the cases of Mayors Allentown and Reading as guideposts for this Court. There are a wealth of other federal sentences imposed on corrupt mayors akin to, equally dissimilar, to the present case.[1] Each of these is a unique study in human failing and criminality.

---

[1] *United States v. Kwame Kilpatrick*, No 2:10-CR-20403 (E.D.Mich. 2013)(28 year sentence for racketeering, bribery, and corruption offenses committed during his term as Mayor of Detroit); *United States v. Ray Nagin*, No. 2:13-CR-11 (E.D.La. 2013)(10 year sentence imposed for corruption committed as Mayor of New Orleans); *United States v. Milton Milan*, No. 1:00-CR-194 (D.N.J. 2000)(87 month sentence imposed for corruption as Mayor of Camden); *United States v. Tony*

12

While these other corruption sentences are noteworthy in their own right, they are poor guides to the task faced by this Court in sentencing this individual for the crimes he committed.

IV. RECOMMENDATION

The government recommends a sentence of imprisonment within the range of eight to ten years. The United States arrived at this recommendation after balancing the applicable sentencing guidelines, the policies behind the Sentencing Guidelines, the Section 3353(a) factors, as well as other considerations including the following. The government considered what the guidelines would have been if the loss figure were limited to the value of the bribe payments. And, the government looked to what the guidelines would have been if the financial loss to the City of Scranton were the loadstar of the guideline calculation. The sentences imposed on other mayors federally prosecuted for corruption were also weighed. Finally, the government

---

*Mack*, No. 3:12-CR-795 (D.N.J. 2012)(58 month sentence imposed for bribery committed while Mayor of Trenton); *United States v. Dwaine Caraway*, No. 3:18-CR-409 (N.D. Tex. 2018)(56 month sentence imposed for corruption as Mayor of Dallas); *United States v. Catherine Pugh*, No. 1:19-CR-541 (D. Md. 2019)(36 months sentence imposed for corruption as Mayor of Baltimore).

considered the value to the public of the Defendant's early acceptance of responsibility and prompt resignation from office.

On balance, the United States recommendation is consistent with the policies of the Sentencing Guidelines and Section 3553(a) factors.

Respectfully submitted,

DAVID J. FREED
UNITED STATES ATTORNEY

/s/ Michelle Olshefski
Michelle Olshefski
Assistant United States Attorney

/s/ Michael A. Consiglio
Michael A. Consiglio
Assistant United States Attorney
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108
717/221-4482 (Office)
717/221-2246 (Fax)
Michael.consiglio@usdoj.gov
Bar No. PA-76103